**SO ORDERED.**

**SIGNED this 27 day of March, 2008.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **DERRICK L. LOFTON** | 06-04032-8-RDD |
| **TERESA C. LOFTON** | |
| DEBTORS | |
| | |
| **DERRICK L. LOFTON** | |
| Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | 07-00054-8-RDD-AP |
| **CAROLINA FINANCE, LLC** | |
| Defendant | |

### MEMORANDUM OPINION

The trial of this adversary proceeding filed by the plaintiff, Derrick L. Lofton against the defendant, Carolina Finance, LLC, seeking sanctions pursuant to 11 U.S.C. § 362(k), was held on March 18, 2008 in Greenville, North Carolina. The court has previously entered an order allowing summary judgment in favor of the defendant for claims brought by the plaintiff pursuant to Article 2, Chapter 75 of the North Carolina General Statutes. For the reasons stated below, judgment will

be entered in favor of the plaintiff with regard to the remaining claim for relief for willful violation of the automatic stay against the defendant.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I), which this court may hear and determine.

The parties stipulated to the following facts. The plaintiff is a citizen and resident of Wayne County, North Carolina, and is a debtor in the bankruptcy case referenced above. The defendant is a limited liability company organized and existing under the laws of the State of North Carolina. The plaintiff filed for relief pursuant to chapter 13 of the Bankruptcy Code on December 10, 2006. The defendant was included as a creditor on the plaintiff's bankruptcy case. The defendant had actual notice of plaintiff's bankruptcy filing.[1] The defendant filed a proof of claim in plaintiff's bankruptcy case on March 15, 2007. Defendant's Exhibit 5. On April 27, 2007, an employee of the defendant filed a lawsuit in the District Court – Small Claims Division for Wayne County against the plaintiff seeking to recover money for which it had filed a proof of claim. The plaintiff was served with the lawsuit on Sunday, May 20, 2007, at approximately 4:40 p.m. by a deputy sheriff of the Wayne County Sheriff's Department. On May 20, 2007, at approximately 10:00 p.m., plaintiff delivered the small claims pleadings to the drop box at his attorney's office. On May 21, 2007, plaintiff's attorney prepared, signed and filed the Adversary Proceeding Complaint. Neither

---

[1] The defendant received notice of the plaintiff's bankruptcy filing, including notice of the 341 meeting of creditors mailed on December 13, 2006, notice that the 341 meeting had been continued mailed on January 13, 2007, and notice of the motion for confirmation mailed on March 2, 2007.

plaintiff nor plaintiff's attorney contacted defendant or defendant's attorney prior to filing the adversary proceeding. Plaintiff's attorney reviewed defendant's proof of claim before filing the adversary proceeding. Under cover of letter dated May 23, 2007, plaintiff's attorney mailed to defendant's attorney copies of the Adversary Proceeding Summons and Complaint, indicating in his cover letter as follows: "I note that you filed a proof of claim in this matter with the chapter 13 trustee. As such, I'm providing you a courtesy copy of these documents." Defendant's Exhibit 1. On May 29, 2007, upon returning from the Memorial Day long holiday weekend, defendant's attorney received said cover letter with enclosures and, on the same day, contacted plaintiff's attorney. On May 30, 2007, defendant's attorney mailed to the Wayne County Clerk of Superior Court a dismissal of the small claims action and served both plaintiff and plaintiff's attorney with the same. Defendant's Exhibit 2. On May 31, 2007, said dismissal was received and filed by the Wayne County Clerk. Defendant's Exhibit 3. The defendant had a procedure in place for handling bankrupt accounts, including the notation of the bankruptcy in the computer and in the hard files themselves upon receipt of the notice of bankruptcy filing. In this instance, the procedure for handling bankruptcy accounts was not followed. No judgment was entered in the small claims proceeding. The plaintiff did not attend the small claims proceeding hearing. The plaintiff did not incur any medical bills as a result of the small claims proceeding.

Testifying at the hearing of this matter was Mr. Victor Morris, who has been employed with the defendant for three years as the collections manager at the Kinston, North Carolina branch of the defendant. Mr. Morris testified that the defendant finances automobiles in its secondary market of eastern North Carolina. The parent company of the defendant is based in Greensboro, North Carolina, with seven companies in North Carolina and Virginia. Mr. Morris testified that his duties

include reviewing accounts, assignment of collection of accounts, assignment of repossession of cars, disposal of cars by wholesale or auction, and overseeing 30-day and 60-day accounts. As part of his duty to oversee the collection of accounts, Mr. Morris makes phone calls for those accounts and supervises others making those calls. Mr. Morris testified that Connie Howington receives the mail each day at the Kinston office, including bankruptcy notices. All bankruptcy notices are then routed to Daniel Rhem, manager of the Kinston office, who handles them from that point. Mr. Morris testified that he never receives bankruptcy notices. Mr. Morris testified that part of his duties is to file lawsuits on behalf of the defendant. He files suits in Lenoir, Wayne, Craven, Pitt and Wilson Counties. Mr. Morris next explained the process for filing suits. He indicated that he is first given a report prepared by Mr. Rhem that indicates which accounts are due for $5000 or less. He then reviews the account on the computer to determine which county the customer resides in to determine in which county a small claims action must be filed. Mr. Morris only files suit against accounts at the direction of Mr. Rhem. Mr. Morris indicated that he filed a small claims complaint for money owed in the amount of $4,978.82 against the plaintiff, which was prepared on April 25, 2007. Plaintiff's Exhibit 1. He indicated that he maintains a stack of small claims complaint for money owed forms in his office. Mr. Morris stated that he filled out the complaint, obtaining the necessary information from the defendant's computer file on the plaintiff's account. At that time, there was nothing in the computer file to indicate that the account was in bankruptcy. He then signed the bottom of the complaint. Mr. Morris indicated that, at that time, he also filled out other information necessary for the Clerk of Court's Office of Wayne County to file the complaint and for the Wayne County Sheriff's Department to serve the complaint and summons upon the plaintiff. Plaintiff's Exhibit 2. Mr. Morris admitted that it was his intent to file the small claims action against

the plaintiff. He further admitted that he does not check to determine if an account is in bankruptcy prior to filing lawsuits on behalf of the defendant. Once he receives the list of accounts from Mr. Rhem, he simply proceeds to file the small claims actions. Mr. Morris indicated that he would not have pulled the paper file on the plaintiff's account prior to filing the small claims action, as all of the information necessary to complete the complaint is kept in the computer file. Mr. Morris explained that he undertook no independent means to determine if the plaintiff's case was in bankruptcy, but relied upon Mr. Rhem to ensure it was appropriate to file suit on accounts through a small claims action. Mr. Morris further testified that he learned that the plaintiff was in bankruptcy only after he returned from the proceedings in Wayne County against the plaintiff, although the timing of Mr. Morris' knowledge was later questioned by Mr. Rhem. Mr. Morris testified that he has never personally violated the automatic stay before. To his knowledge, the defendant has never violated the automatic stay before. Mr. Morris also testified that he understands the significance of the automatic stay in bankruptcy and understood at the time he filed the complaint against the debtor that he was not supposed to do so in cases in bankruptcy.

The plaintiff testified that, prior to filing bankruptcy, he and his wife were struggling to pay the bills, receiving calls from creditors about past-due payments, and in danger of having their vehicles repossessed and the note on their house foreclosed. In fact, one of the debtors' vehicles was repossessed before they filed bankruptcy. At the time of their financial difficulties, the debtors were both employed by the North Carolina Department of Corrections. They left those jobs and began working as professional truck drivers. In the beginning, they were not making enough money, which compounded their financial stress. However, once the debtors filed for bankruptcy, the calls from creditors stopped, and things were getting back to normal in their household. The plaintiff

testified that he had made his plan payments to the trustee each month from the time of filing through May 2007. On Sunday, May 20, 2007, around 4:30 p.m., there was a knock at the debtors' door. When he answered the door, there was a Wayne County Sheriff's deputy there. He asked for Mr. Lofton, who identified himself. At that time, the deputy handed the plaintiff some forms and left. After the deputy left, the plaintiff read the summons to appear in small claims court on May 22, 2007. Plaintiff's Exhibit 2. The plaintiff knew he had to appear in court on that date and that he was being sued. He also knew that the creditor was listed in his bankruptcy because of a deficiency from the repossessed vehicle.

The debtor testified that from December 2006 through May 2007, things were getting back to normal. For that reason, when he received the summons, he became very upset because he didn't think situations like this were supposed to happen after filing bankruptcy. The plaintiff testified that, when he saw that the defendant was trying to sue him, he started cussing and yelling. When his wife questioned him about what was wrong and he started to tell her, he just got angrier. He slammed the door and almost broke a very expensive vase owned by Mrs. Lofton.

The plaintiff testified that after he settled down a little, he tried to contact his attorney's office. He left a voicemail because no one was there on Sunday. That evening, he took the papers he had received from the deputy and dropped them off in the drop box outside his attorney's office. He testified that the distance from his home to the attorney's office is roughly 12 to 15 miles.

The plaintiff had to be in Rocky Mount by 12:00 a.m. on May 21, 2007 to pick up a load going to Seymour, Indiana, which had to be there by 2 p.m. on May 21, 2007. Therefore, he drove his tractor truck to the attorney's office, which was about 10 miles out of his way to Rocky Mount. The debtor indicated that if his employer determined that he had gone off route, he could have had

6

to pay for the gas used in the truck, which has a 200 gallon tank. The truck averages 5.8 miles per gallon. His employer did not charge him for the gas required to make this particular off-route trip. After he dropped off the papers, he proceeded to Rocky Mount and picked up the load to be delivered the following afternoon in Indiana. Once the plaintiff was on the road, at 7 a.m. the next morning, he attempted to contact his dispatcher in Charlotte, North Carolina to explain that the dispatcher might need to find someone to cover the plaintiff's load assignment for Tuesday, May 22, 2007. When the dispatcher requested a reason, the plaintiff had to explain about the lawsuit and his court date. He also had to explain about his vehicle being repossessed and the resulting deficiency claim. The plaintiff testified that he was embarrassed to have to disclose personal information of that nature to his dispatcher, but if he had to go to court on Tuesday, he would have had to find someone to cover Tuesday's load. Having to request a substitute driver is a big deal because it creates a chain effect among the employer's drivers. The debtor testified that he and his wife have a designated trucking run. If they had to be pulled off that run at any time, the dispatcher could have pulled them off that run permanently. Then, they would not have the certainty of a designated route. After talking with their dispatcher for approximately twenty minutes, the plaintiff told the dispatcher that he would keep him updated as he could. After speaking with his attorney, the plaintiff was able to notify the dispatcher that he did not have to go to court on May 22, 2007. Therefore, he did not have to forego his load on Tuesday and was able to make his regular runs. When he found out he would not have to go to court, the plaintiff was relieved, as was his wife, because they ran a designated team route and she could not have made the run by herself. The plaintiff testified that he feels he is entitled to some compensation from the defendant because he was protected under the bankruptcy laws at the time the small claims action was filed, and the

defendant was notified when the bankruptcy was first filed. The plaintiff indicated that he had been sued before but did not consider it a big deal then because he was not in bankruptcy at that time.

Mr. Daniel Rhem testified that he has been employed by the defendant for five and one-half years, and is currently the manager of the Kinston office, having served in that capacity since January 2007. Prior to that, Mr. Rhem was the assistant manager in the Kinston office. Mr. Rhem admitted that he was aware of the plaintiff's bankruptcy filing prior to the filing of the small claims action because he had received a notification of the bankruptcy in the mail.

Mr. Rhem explained that the procedure of the defendant is to note the bankruptcy in both the hard file and in the computer file upon receipt of the bankruptcy notice. However, in this instance, Mr. Rhem overlooked the computer file and only made a notation in the hard paper file. When asked for the reason for his oversight, he indicated that he had recently taken over as manager and the office was understaffed at that time. Mr. Rhem stated the office was very busy during tax season. Mr. Rhem indicated that the hard file is kept in a separate filing cabinet and would not have been reviewed prior to the filing of the small claims action, as the contract and a copy of the title are kept in a different file which is taken to court. All subsequent notices would have been filed in the hard paper file.

Mr. Rhem admitted that the small claims action was filed at his direction. As manager, it is his job to pull the monthly reports and to note any cases where amounts owed were $5,000.00 or less for pursuit in small claims court. Once he pulled the report and noted those cases, he directed Mr. Morris to proceed with the filing of small claims actions. He indicated that the plaintiff's name would have been one of fifteen to twenty names on that report. Had the plaintiff's bankruptcy been correctly coded into the computer system, the plaintiff's name would have still been on the list, but

would have been tagged as a chapter 13 debtor, and would not have been pulled for pursuit of the small claims action.

Mr. Rhem indicated that, had the plaintiff or his attorney notified him of the plaintiff's bankruptcy after the filing of the action, the action would have been immediately dismissed. As soon as Mr. Rhem realized that a mistake had been made, he contacted the defendant's attorney to dismiss the case, and the attorney did so immediately.

Mr. Rhem indicated that Mr. Morris was confused about when he was notified of the plaintiff's bankruptcy. Mr. Rhem stated that it was not on the date of the small claims action, but rather on the date he received a copy of the adversary proceeding complaint from the plaintiff's attorney.

Mr. Rhem testified that, after speaking with the managers of the defendant's locations in Greensboro and Kernersville, he was not aware of any other violations of the automatic stay by the defendant. Mr. Rhem indicated that he did understand the importance of the automatic stay and was unaware of any other instances in which there had been a failure to code a bankruptcy according to the defendant's procedure.

Counsel for the defendant argues that there are two issues in this case, willfulness and injury or damages. Counsel argues that this case occurred because of a clerical error, and therefore should not be considered a willful violation of the automatic stay. In support of his argument, counsel cites two cases from the Western District of North Carolina, In re Hamrick, 175 B.R. 890 (W.D.N.C. 1994) and In re Peterson, 297 B.R. 467 (Bankr. W.D.N.C. 2003). Both of these cases involved situations where the creditor violated the automatic stay via automatically generated computer errors after a prior violation of the automatic stay by the creditor. In both cases, the violation was

9

immediately remedied upon notification. Counsel argues that, had the plaintiff or his counsel notified the defendant of the violation prior to the filing of this action, the violation would have been immediately remedied by a voluntary dismissal of the small claims court complaint with no necessity of an adversary proceeding.

Counsel for the defendant further argues that the plaintiff has suffered no injury or damages in this case. He points to the fact that there was no damage to the plaintiff's property and no physical harm done to the plaintiff as proof that the plaintiff cannot meet this requirement. Further, counsel argues that, if the plaintiff is entitled to damages, those damages could have been mitigated by counsel for the plaintiff contacting the defendant prior to the filing of the adversary proceeding.

Counsel for the plaintiff argues that this case is about determining the appropriate damages to compensate the plaintiff for the day and one-half he spent worrying about the small claims action. During that day, he had to get things resolved so that he didn't have to miss work and so that he would not have to go to court, thereby mitigating his damages. Counsel argues that willfulness is present in this case because the defendant had been notified of the bankruptcy case and had participated in the bankruptcy case by filing a proof of claim. Then, the defendant's employees had to intentionally fill out the complaint form, make out a check to the clerk of court for the cost of filing and service, and mail it to the clerk of court. Counsel indicated that it has been his experience that entering settlement negotiations prior to the filing of a contested action is useless, which is why he did not contact defendant's counsel prior to filing the adversary proceeding.

Based on the foregoing, the court finds that the plaintiff has been injured by a willful violation of the automatic stay and shall recover actual damages including costs and attorney fees. The court further finds that punitive damages are not appropriate in this case. In addition to the facts

stipulated by the parties and testified to during the trial of this matter, as set forth hereinabove, the court finds that this court has previously entered summary judgment in part in favor of the defendant. In the court's order regarding summary judgment, the court found that the defendant had received notice of the plaintiff's bankruptcy case on several occasions.[2]

As held in the cases of Citizens Bank v. Strumpf, 37 F.3d 155 (4th Cir. 1994), overruled on other grounds 516 U.S. 16, 116 S. Ct. 286, 133 L. Ed. 2d 258 (1995) and In re Jones, Case No. 06-00380-8-RDD (Bankr. E.D.N.C. June 27, 2007), willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay. In this case, the defendant admitted to a violation of the automatic stay and the overwhelming evidence is that the defendant had the intent to file the lawsuit with notice of the automatic stay at that time. Therefore, the defendant's actions violate the automatic stay and were willful.

The court is also concerned with the lack of a proper verification procedure within the defendant's course of business. The defendant is a multi-million dollar financial institution handling smaller loans. Once the computer entry is made, there is no further check by the defendant regarding the debtor's bankruptcy status. The defendant has no computer software or other procedure that would provide for a method of double-checking to ensure a computer entry was made upon receipt of a bankruptcy notice. Also, prior to filing a small claims action and going to court to pursue a judgment, the hard file of a debtor is not reviewed. Under Rule 11 of the North Carolina Rules of Civil Procedure, which would have applied in the state court proceeding, a party who is not

---

[2] The defendant received notice of the plaintiff's bankruptcy filing, including notice of the 341 meeting of creditors mailed on December 13, 2006, notice that the 341 meeting had been continued mailed on January 13, 2007, notice of the motion for confirmation mailed on March 2, 2007, and a stamped filed copy of the proof of claim. Each receipt of bankruptcy notices and correspondence gave the defendant an opportunity to properly code the computer system. No such procedure was in place.

represented by an attorney shall sign all papers and by so signing is verifying the accuracy of the information contained therein. In this case, the defendant did not engage in an appropriate review of the file prior to filing the small claims action against the plaintiff. The defendant only reviewed the information on the computer screen. The defendant needs to take immediate steps in order to change its procedures to make sure this type of incident does not happen again.

     Counsel for the defendant cites the Western District of North Carolina cases to support his position that this case, like those, should simply be considered a clerical error, rather than a willful violation of the automatic stay. In this case, the defendant received four separate notices of the plaintiff's bankruptcy. Each time a notice was received, someone had to review it and file it, each time presenting another opportunity to ensure that the bankruptcy had been properly documented in the computer file. Prior to filing the small claims action, the defendant's employees had another opportunity to review the paper file, where the bankruptcy notices were kept. Had they done the due diligence of document review and preparation required prior to filing a civil action against someone, the notices would have been seen and the action would not have been filed. The Western District cases all involved computer errors, situations in which a letter or notice was automatically generated by the computer of the creditor. In this case, there was an initial failure to log the bankruptcy in the computer file, and was followed by four other failures to log the notices received into the computer properly. This case also involved the intentional action of completing the small claims complaint and having it filed with the clerk of court and served upon the plaintiff by a deputy sheriff at the plaintiff's home on Sunday afternoon. Because the defendant's actions in this case resulted in the filing of a lawsuit, rather than just a notice or collection letter sent to the plaintiff, it will remain on

the public record forever. This is clearly a more egregious violation than a computer-generated notice or collection letter.

Counsel for the defendant also argues that the plaintiff suffered no injury or damages. The court disagrees. The plaintiff was exposed to the tension, anger, worry, and disruption caused by the service of the complaint and summons upon him on a Sunday afternoon at his home by a Wayne County Sheriff's deputy. These emotions were exacerbated by the fact that the plaintiff knew the action should not have been filed while he was under the protection of the Bankruptcy Code. The next day, the debtor had to disclose that he was being sued to his employer's dispatcher, not only causing him embarrassment, but certainly putting his standard route in jeopardy and causing him concern over the impact it could have on his future employment. Had the defendant had the proper procedures in place to ensure that a violation of the automatic stay would not occur when it filed a small claims action, all of this could have been avoided. Although difficult to quantify, as is the case when considering damages for pain and suffering, the court finds that the plaintiff is entitled to actual damages.

Finally, counsel for the defendant argues that plaintiff's counsel should have contacted either him or the defendant prior to the filing of this action. Counsel cites L.B.R. 9011-3(b), which states, "When determining sanctions under 11 U.S.C. § 362(h), the court shall consider whether the moving party notified the offending party and gave the party an opportunity to cure the alleged violation."[3] By the time the defendant dismissed the small claims complaint, damages to the plaintiff had already occurred. What could the defendant have done at this point to cure the damages caused by the

---

[2]Pursuant to the amendments made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. § 362(h) is now 11 U.S.C. 362(k).

13

willful violation of the automatic stay? Perhaps a letter of apology, or an agreement to revamp the defendant's internal office procedures for docketing and filing bankruptcy notices would have been appropriate. There is no evidence that the defendant took any such actions or made such an overture. However, it was the plaintiff's counsel's professional judgment decision to proceed with the filing of the adversary proceeding in order to "equal the playing field" with the defendant, who chose to file a small claims collection action against the plaintiff some five months after the bankruptcy had been filed, after having received several notices from the bankruptcy court, after the entry of the order of confirmation, and after the defendant's filing of a proof of claim. The professional judgment of the plaintiff's counsel cannot be deemed per se unreasonable.

Based upon these findings of fact, the plaintiff has proved by a preponderance of the evidence that a willful violation of the automatic stay was committed by the defendant and the plaintiff is entitled to damages. Therefore, the court awards damages in the amount of $1,500.00 to the plaintiff. The plaintiff is also entitled to reasonable attorney fees. The court has reviewed an affidavit submitted by plaintiff's counsel, which indicates that he has completed 35.3 hours of work in connection with this case.[4] The court finds that a reasonable hourly rate to be applied to those hours is $200.00. Therefore, plaintiff's counsel is entitled to $7,060.00 in fees and $320.79 in costs.

A separate judgment will be entered.

**SO ORDERED.**

**END OF DOCUMENT**

---

[3]The court notes that much of the plaintiff's counsel's time was spent at a deposition taken by the defendant (2.2 hours); and in defending the motion for summary judgment filed by the defendant (14.9 hours).